IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Thomas B. Sullivan, #270534,        )<br>                                                                )<br>                           Plaintiff,       )<br>                                                                )<br>          vs.                                                )<br>                                                                )<br>Jon Ozmint, Director; Richard Bazzle,  )<br>Warden; Lt. Visser; Officer Bennett;     )<br>and Aimee Enloe, In their Individual    )<br>Official Capacity,                                  )<br>                                                                )<br>                           Defendants.  )<br>                                                                ) | Civil Action No. 8:04-22137-GRA-BHH<br><br>**REPORT OF MAGISTRATE JUDGE** |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, Untied States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on September 7, 2004, seeking damages for alleged civil rights violations. On September 17, 2004, this court filed a report recommending that the complaint be dismissed without prejudice because the plaintiff had not exhausted his administrative remedies. By order dated October 14, 2004, U.S. District Judge G. Ross Anderson, Jr., remanded the matter back to this court, based on the plaintiff's objections to the report and recommendation which appeared to "show that the Plaintiff has proceeded further in the grievance process than originally indicated in the complaint and that Plaintiff may have exhausted his administrative remedies" (order at 2).

On March 11, 2005, the defendants filed a motion for summary judgment. By order filed March 14, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On April 1, 2005, the plaintiff filed a response in opposition to the motion for summary judgment.

## **FACTS PRESENTED**

The plaintiff is currently incarcerated at Evans Correctional Institution, a facility of the South Carolina Department of Corrections (SCDC). At the time of the events he alleges in his complaint, he was incarcerated at Perry Correctional Institution (PCI). He has named as defendants the warden, two correctional officers and a medical technician at PCI, as well as the Director of SCDC. The plaintiff alleges that he received injuries as a result of a fall when he exited a van while he was being transported to court for a hearing.

Specifically, the plaintiff alleges that on December 4, 2003, he was transported in a SCDC van to the Greenville County courthouse for a post-conviction relief hearing. He alleges that all SCDC vans have a portable stool which "is placed in front of the side door of the van for inmates to step on either getting in or exiting the van." On the day in question, the plaintiff alleges that when he stepped onto the footstool, it "tilted causing Plaintiff to lose his balance, at which time the Plaintiff fell head first, landing directly on his head, causing him severe facial swelling, upper and lower backaches and lightening, hot flash headaches." The plaintiff alleges that he did not receive medical treatment after his fall until he returned to PCI later that afternoon. According to the plaintiff, when he was examined in the PCI medical department that evening, his blood pressure was elevated and he was given blood pressure medication. The next day he was again seen in medical and was given a higher dosage of blood pressure medication as well as muscle relaxants and

2

pain medication. The plaintiff alleges that he was not allowed to see a doctor until January 28, 2004, despite his repeated requests and complaints of pain.

The plaintiff contends that as a result of this incident, he is now permanently on medication and has suffered "enumerable pains from the deliberate indifference that SCDC personnel showed by allowing the plaintiff to fall while restrained causing debilitating effects to his health from the fall and subsequent severe blow he received to his head." According to the plaintiff, the actions of the defendants amounted to cruel and unusual punishment. The plaintiff alleges that the use of the stool from which he fell and the alleged deliberate indifference to his medical needs violated his constitutional rights. The plaintiff seeks damages from the individual defendants and further asks for injunctive relief and for a "Grand Jury hearing on this matter."

## **APPLICABLE LAW**

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining

whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## ANALYSIS

The plaintiff appears to be raising two separate claims. His first claim is that the use of the footstool in question while transporting the plaintiff (and other inmates) constituted a reckless disregard for his safety. In his second claim, the plaintiff alleges that the defendants denied him medical attention and that this constituted an unconstitutional indifference to his medical care.

*Safety Issue*

The plaintiff appears to be alleging that the defendants were deliberately indifferent to his safety. Deliberate indifference in the face of pervasive risk of harm or deliberate indifference or callous indifference on the part of prison officials to a specific known risk of harm states an Eighth Amendment claim. *Pressley v. Hutto*, 816 F.2d 977 (4th Cir. 1987). The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "'[I]t is obduracy and wantonness, not inadvertance or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Moore v. Winebrenner*, 927 F.2d 1312, 1216 (4th Cir. 1991)(quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

Even if one were to assume that the use of the footstool in question constituted deprivation of a basic human need, there is no evidence that the defendants possessed a "sufficiently culpable state of mind" to state a violation of the plaintiff's constitutional rights. The officers followed normal procedure in loading and unloading the inmates into and out of the prison van. Rather than have them step down from the van in restraints with no step, the officers provided a step stool to aid them. The plaintiff was the last prisoner to step out of the van, and none of the other prisoners had fallen (Visser aff. at ¶ 6). The defendants had no notice that there was anything wrong with the stool and, in fact, they continued to use the stool and follow the same procedure (Visser aff. at ¶ 7). Following the plaintiff's fall, the officers checked on his condition and he indicated that he

was not hurt (Bennett aff. at ¶ 6). Accordingly, the plaintiff has not demonstrated that the defendants were aware of any safety issues or that they acted with deliberate disregard for the plaintiff's safety. Summary judgment on this claim, therefore, is appropriate.

*Medical Attention*

The plaintiff also alleges that he was denied medical attention and treatment for his serious medical injuries stemming from his fall on December 4, 2003.

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

Evidence submitted by the defendants establishes that the plaintiff received medical care the day of his fall. In affidavits submitted by the defendants, the two officers who were transporting the plaintiff to the courthouse stated that the plaintiff indicated that he was "ok" immediately after his fall and that he not appear to be dazed, upset or in any pain (Bennett aff. at ¶ 6; 8). The medical records indicate that the plaintiff was taken to the medical unit at PCI upon his return that evening following the court hearing. The plaintiff complained of a headache, which was attributed to high blood pressure. The plaintiff was given medication for his blood pressure and his condition was monitored that night (Austin aff. at ¶¶ 2 -4). According to the affidavit of defendant Amy Enloe, a nurse practitioner at

PCI, the plaintiff was seen in the medical unit again the next day. He was given Motrin and a muscle relaxer at that time (Enloe aff. at ¶ 2).

Over the course of the next three to four months, the plaintiff received regular medical treatment at PCI.[1] In addition, the plaintiff underwent an MRI on December 16, 2003. Later that same week x-rays were performed. Results from all of these tests were normal. However, because the plaintiff continued to complain of pain, he was given passes excusing him from work and was continued on his medications.

On January 28, 2004, the plaintiff was examined by a doctor, who noted no abnormalities, normal range of motion and no difficulty moving. The plaintiff complained of pain in his left knee and was given medication for arthritis. On February 9, 2004, the plaintiff returned to the medical unit complaining of back pain and requesting a different medication. An appointment with a physician was scheduled at that time.

On March 2, 2004, the plaintiff was again examined in the medical unit. He complained of neck pain, lower back pain and left knee pain. He wanted more medication and to be excused from work. The physical examination yielded normal results and no obvious limitations. An MRI and x-rays of his lumbar spine showed a spur at L4, indicating degenerative disc disease. It was noted that the plaintiff had positive tenderness around the L5-S1 interspace of his spine, but no radiculopathy. His left knee was tender over his inferior and interior ligaments but he reported that it only hurt when he "walked a lot." At that time, his medications for muscle stiffness and arthritis pain were continued, as was his blood pressure medication.

On March 10, 2004, x-rays were taken of the plaintiff's left knee. On March 17, 2004, the treating physician noted that the x-rays were abnormal as the plaintiff

---

[1] The plaintiff's prison medical records were submitted to the court in defendant's exhibit 1.

apparently had internal derangement of his knee with spurring of the medial tibial plateau.[2] At that time, the physician recommended an MRI to rule out a non-displaced fracture of the tibia. A consultation and MRI was scheduled through Health Services at SCDC.

On April 21, 2004, the plaintiff did not pick up his Motrin prescription at the regularly scheduled time. On May 24, 2004, the plaintiff refused the orthopedic evaluation appointment for his knee. Another appointment was scheduled for July 26, 2004. On that date, the plaintiff signed a refusal for medical treatment and the appointment was not rescheduled based upon the plaintiff's refusal. According to the medical records submitted by the defendants, the plaintiff has not sought any further medical treatment for his neck, knee or back since April 2004.

A claim of deliberate indifference to serious medical needs requires a greater showing than made here, even if it were to be assumed that the plaintiff's medical needs were serious and that a finding of negligence on the part of one or more of the defendants could be supported by the evidence. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Estelle*, 429 U.S. at 106. The plaintiff has not shown that he had any serious medical need to which the defendants responded with deliberate indifference. At the time of his fall, the plaintiff indicated that he did not need immediate medical care. Since the fall, he has received regular treatment from prison medical personnel and the records indicate that his condition has been adequately monitored. As such, the plaintiff's claims are merely bald allegations which are insufficient to survive summary judgment. *See White v. Boyle*, 538 F.2d 1077 (4th Cir. 1976)(conclusory allegations insufficient to avoid summary judgment).

At best, the plaintiff disagrees with the treatment he has received. Thus, if anything, the plaintiff has raised allegations of medical malpractice. Section 1983 provides a remedy for violations or deprivations of rights secured by the Constitution or other laws

---

[2] There is no indication in the record that this condition resulted from the plaintiff's fall in December 2003.

8

of the United States, not ordinary state torts. *See Maine v. Thiboutot*, 448 U.S. 1 (1980); *Tucker v. Duncan*, 499 F.2d 963, 965 (4th Cir. 1974) (section 1983 is not a federal remedy for ordinary state tort claims).

### *Respondeat Superior*

The plaintiff brought this action against defendants Ozmint and Bazzle due to their "acts and omissions under color of authority" (am. comp. at ¶¶ 4-5). However, the plaintiff has alleged no individual actions by the named defendants that were the proximate cause of his alleged injuries.

The doctrine of *respondeat superior* generally does not apply to §1983 suits. *Baker v. Lyles*, 904 F.2d 925 (4th Cir. 1990) (citing *Monnell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 694 n. 58 (1978)). A supervisor may be held liable for the constitutional violations committed by his subordinates, but only if the plaintiff can show that the supervisor tacitly authorized, or was deliberately indifferent to, the subordinates' actions. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994). Supervisory liability for constitutional injuries is not imposed on a respondeat superior basis. *Id.* In order to hold a supervisor liable for a constitutional injury, a plaintiff must establish three elements: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Id.* at 799. A plaintiff must generally produce evidence that the conduct complained of is prevalent or has been repeated on several occasions, and that the supervisor had refused to act "in the face of documented widespread abuses." *Id.* (citing *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). The plaintiff here has not met this burden. There are no

factual allegations implicating these named defendants. Moreover, there is no evidence that a constitutional injury occurred, a prerequisite to supervisory liability claims. As to defendants Ozmint and Bazzle, summary judgment is appropriate on this additional basis.

*Qualified Immunity*

The defendants further argue that they are entitled to qualified immunity. As set forth above, there is no evidence that the defendants violated any constitutional rights of the plaintiff. Accordingly, it is unnecessary to address this issue. *See Young v. City of Mount Ranier*, 238 F.3d 567, 577-78 (4th Cir. 2001) (where court concluded that the complaint did not allege a constitutional violation, there was no need to consider the question of qualified immunity).

**CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the defendants' motion for summary judgment be granted.

_____
BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

September 21, 2005

Greenville, South Carolina